**SO ORDERED.**

**SIGNED April 27, 2018.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                 LAKE CHARLES DIVISION

IN RE:

DAVID DUPRE HEBERT,                          CASE NO. 16-20294

     Debtor                                  Chapter 7
----------------------------------------------------------------
SOUTHLAND TRUCK LEASING, LLC,
     Plaintiff

Versus                                       ADVERSARY NO. 16-02007

DAVID DUPRE HEBERT,
     Defendant
----------------------------------------------------------------
                    REASONS FOR DECISION
----------------------------------------------------------------
```

This is a non-dischargeability proceeding brought by Southland Truck Leasing, LLC ("Southland") against the debtor, David Dupre Hebert, under 11 U.S.C. § 523(a)(2). The court took the case under advisement after a trial on the merits and the submission of post-trial memoranda. The court has considered the record, the relevant authorities, and the arguments of counsel, and rules as follows.

**JURISDICTION**

The court has jurisdiction over the matters asserted in this adversary proceeding as well as the Trustee's motion to sell pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

**BACKGROUND**

Hebert organized Integrity Energy Services, LLC ("Integrity") in May 2008 as a Louisiana limited liability company. Hebert served as the Chief Executive Officer and President of Integrity, and in that role hired Merlene Marceaux as Integrity's General Manager. Marceaux served in that role until January 2009. Integrity provided services to the oil and gas industry and needed heavy duty equipment – such as day cap tractors and vacuum trailers – to carry on its business. Accordingly, Integrity negotiated an equipment lease with Southland to lease the heavy equipment that it needed for its business. Following these negotiations, Southland sent Integrity a form lease as well as a personal guarantee to be executed by Hebert. (Plaintiff's Exhibit ("Pl. Exh.") Nos. 3 and 4) Marceaux signed the lease in her capacity as Integrity's General Manager. (Id.) Marceaux also signed the personal guarantee using

-2-

Hebert's name. (Id.) In addition, Hebert provided Southland with a personal financial statement dated July 7, 2008. (Pl. Exh. No. 7). Scott Oliphant, Southland's President, testified that the personal guarantee and financial statement were essential to Southland's decision to go forward with the lease to Integrity. Marceaux testified that she conferred with Hebert on both the lease and the personal guarantee. Marceaux testified that Hebert authorized her to sign the guarantee on his behalf. She testified that she was concerned about signing Hebert's name on the personal guarantee, but ultimately signed it because she did not want to lose her job. Apart from the July 7th financial statement, Hebert had no discussions directly with Southland about the guarantee or his ability to pay Southland any amounts due under the lease in the event of a default by Integrity.

Integrity ultimately encountered significant financial problem and Hebert invested most of his liquid assets in the business to keep it afloat. (Pl. Exh. No. 10). In late 2011, Integrity defaulted on lease payments to Southland and, on February 24, 2012, Integrity filed for relief under Chapter 7 of the Bankruptcy Code. Southland ultimately sent a demand letter to Hebert seeking to collect the past due lease payments pursuant to the personal guarantee. When Hebert did not respond to Southland's demand letter, Southland filed suit against Hebert in Louisiana state

-3-

court seeking to collect on the guarantee. In the course of that litigation, Hebert filed pleadings asserting that the personal guarantee was unenforceable because it was not validly executed. He denied that he authorized his signature on the personal guarantee. Hebert also denied knowledge of Southland's request for a personal guarantee. Following a trial on the merits on December 16, 2015, the state court entered judgment against Hebert on the personal guarantee. (Pl. Exh. No. 1). The court found that the personal guarantee was validly executed and enforceable under the theories of ratification or agency. (Pl. Exh. No. 2). The state court awarded Southland $1,325,158.26 for breach of the lease agreement and the personal guarantee. Southland did not assert fraud, nor did the state court enter any findings with respect to fraud. The sole ground for recovery was breach of contract.

On July 25, 2016, Hebert filed for relief under Chapter 7 of the Bankruptcy Code. Southland subsequently commenced this adversary proceeding seeking a judgment that the state court judgment is non-dischargeable under 11 U.S.C. § 523(a)(2). Southland's complaint initially included allegations that Hebert's financial statements were materially misstated. Southland ultimately dropped these allegations and stipulated that it is proceeding solely under 11 U.S.C. § 523(a)(2)(A) based on the guarantee. The court further denied Southland's late request to

add a claim under 11 U.S.C. § 523(a)(6).

**DISCUSSION**

A creditor has the burden of proof in an action to determine the dischargeability of a debt. <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." <u>Hudson v. Raggio & Raggio, Inc. (In re Hudson)</u>, 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 <u>et</u> <u>seq</u>. by a preponderance of the evidence. Section 523(a)(2)(A) provides an exception to the discharge for debts arising from "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by...false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) does <u>not</u> cover liability for alleged false and misleading financial statements. A creditor must prove five elements under this provision in order to prevail: (1) the debtor made a representation; (2) the representation was knowingly false; (3) the representation was made with the intent and purpose to deceive a creditor; (4) the creditor relied upon the representation; and (5)

-5-

the creditor suffered a loss as a proximate result of the representations made by the debtor. Selenberg v. Bates (In re Selenberg), 856 F.3d 393, 398 (5th Cir. 2017).

Southland's non-dischargeability claim is grounded on Hebert's personal guarantee. Specifically, Southland contends that Hebert orchestrated a scheme to provide Southland with a false and unenforceable guarantee by having Marceaux sign the guarantee in Hebert's name:

> "Here, Debtor committed actual fraud on Southland by providing it with a personal guaranty defective in form, but by all visual accounts proper and binding on its face. Debtor, through use of his assistant, orchestrated a scheme wherein the Guarantee (a notarial act) was submitted with a signature purporting to be Debtor's and notarized by Debtor's employee–all at Debtor's instruction. Because the Guarantee was defective (lacking Debtor's true notarized signature), Debtor knew the Guarantee was not valid. Yet, he allowed it to be submitted to Southland as if it contained Debtor's authentic signature–a fact he never disclosed to Southland. By having his general manager sign Debtor's name on the Guarantee and notarize the signature as if it were Debtor's. Debtor clearly *intended* to deceive Southland."

However, the flaw in Southland's fraud case is that the state court ultimately found that guarantee was validly executed, and thus enforceable at the time it was made. As a result, Southland's damages did not arise from a fraudulent attempt to execute a void guarantee, but from Hebert's breach of the guarantee and

-6-

Southland's inability to collect that judgment from Hebert. These collection problems arose not from the circumstances surrounding the execution of the guarantee, but from the fact that Hebert invested most, if not all, of his liquid assets in an attempt to keep Integrity afloat. At bottom, Southland's damages resulted from the breach of the lease and the guarantee, not fraud. Because of this basic flaw in Southland's theory of the case, it cannot establish a section 523(a)(2)(A) claim based on fraud or false pretenses for at least three reasons.

First, Southland's damages were not "a proximate result of the representations made by the debtor." <u>Selenberg</u>, 856 F.3d at 398. The damages reflected in the state court judgment resulted from Integrity's default on lease payments and Hebert's subsequent breach of the guarantee. The circumstances surrounding the execution of the personal guarantee did not proximately cause Southland's damages because the validity of the guarantee was ultimately affirmed. Mr. Oliphant testified that Southland incurred attorney fees and other costs litigating the validity of the guarantee in state court as a result of Hebert's position in the case that the guarantee was unauthorized and invalid. Southland, however, seeks a non-dischargeability judgment with respect to contract damages based on the circumstances surrounding the execution of the guarantee, not Hebert's conduct in connection

-7-

with the litigation.

Moreover, Southland's reliance on In re Lee, 2000 WL 815928 (Bankr. E.D. Pa. June 21, 2000) is misplaced because that case is factually distinguishable. In Lee, the creditor required a signed guarantee from the debtor *and* his wife. Id. at \*1-2. The debtor signed his wife's name without authority, and an arbitrator ruled that the guarantee was not enforceable against the debtor's wife. Id. That is not the case here. The state court here ruled that the guarantee was fully enforceable.

Second, Southland has not established that Hebert made a false representation in connection with the execution of the guarantee that is actionable under section 523(a)(2)(A). Hebert testified that he made no representations nor did he have any conversations with Southland about the personal guarantee. To the extent that Southland's theory of the case is based on an implied representation that the guarantee was valid and enforceable, the state court judgment affirming the validity of the guarantee refutes Southland's position that that implied representation was materially false. To the extent that Southland now contends that Hebert's denial of the guarantee's validity in his state court pleadings was false, these representations were made long after execution of the guarantee, and thus are not actionable as fraud or false pretenses under section 523(a)(2)(A).

-8-

Third, Southland has not established by a preponderance of the evidence that Hebert acted with fraudulent intent. The evidence does not support a finding that Hebert instructed Marceaux to sign the guarantee with the intent that her signature would be invalid and thus provide him with grounds to challenge the guarantee at a later stage. The fact that Hebert ultimately breached the guarantee and challenged the guarantee when sued by Southland does not establish fraud in connection with the original execution of the guarantee. It is black letter law that a promise of future performance followed by a breach does not constitute actionable fraud unless the debtor did not intend to perform at the moment he or she made the promise. <u>Matter of Haber Oil Co., Inc.</u>, 12 F.3d 426, 439-40 (5th Cir. 1994). The record does not support, by a preponderance of the evidence, a finding that Hebert had such an intent when the guarantee was executed. While subsequent conduct can support an inference of a contracting party's intent at the time of the creation of the contract, Hebert's subsequent conduct does not support that pre-existing intent by a preponderance of the evidence. Specifically the record reflects that Hebert invested most, if not all, of his liquid assets in Integrity after 2008 in an effort to save the company. Some of these funds were used to pay the ongoing obligations to Southland. When Integrity ultimately failed and Southland demanded payment from Hebert on the

-9-

personal guarantee, Hebert breached the guarantee because all of his liquid assets had been tied up in Integrity. Further, while Hebert took a position in litigation that the guarantee was invalid, that position was ultimately rejected by the state court.

In sum, Southland cannot establish the essential elements of a non-dischargeability claim under section 523(a)(2)(A). The damages suffered by Southland and reflected in the state court judgment are *contract damages*. They did not arise from fraud or false pretenses. Accordingly, the court finds in favor of the defendant on the plaintiff's non-dischargeability claim.

### CONCLUSION

For the foregoing reasons, the court finds in favor of the defendant, David Dupre Hebert, on the non-dischargeability claim asserted by the plaintiff, Southland Truck Leasing, LLC. The court orders that counsel for the defendant shall submit a judgment in conformity with the court's rulings herein within thirty (30) days.

###